**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARLOS GOMEZ, : Civil No. 05-3829 (RBK)
:
       Petitioner, :
:
    v. : **AMENDED OPINION**
: (as to page 10 case citation)
U.S. PAROLE COMMISSION, :
et al., :
:
       Respondents. :
:

**APPEARANCES:**

    CARLOS GOMEZ, Petitioner pro se
    #22414-053
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

    CHRISTOPHER J. CHRISTIE, U.S. Attorney
    IRENE E. DOWDY, AUSA
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Attorneys for Respondents

**KUGLER**, District Judge

    Petitioner Carlos Gomez, a federal prisoner currently confined at the Federal Correctional Institution ("F.C.I.") at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The named

---

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective

respondents are the United States Parole Commission ("USPC") and John Nash, Warden at F.C.I. Fort Dix.

## I. BACKGROUND

On January 16, 1987, petitioner, Carlos Gomez ("Gomez"), was sentenced by the United States District Court for the Eastern District of New York to a 15-year prison term pursuant to petitioner's conviction on charges of conspiracy and possession with intent to distribute more than 1 kilogram of cocaine, in violation of 21 U.S.C. § 846. The date of Gomez's offense was given as April 24, 1986, which appears to be the date of his arrest and detention. (Pet. Brief at ¶ 3; Resp. Answer at pg. 3, Certification of Sharon Gervasoni, dated November 1, 2005, at Exhibit 1, pp. 1, 4).[2]

One year later, on April 27, 1988, Gomez was sentenced by the United States District Court for the Middle District of North Carolina to a consecutive 16-year prison term for his conviction on charges of conspiracy to unlawfully manufacture, and possess with intent to distribute, approximately 204 kilograms of cocaine, and the unlawful manufacture of approximately 2000

---

jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

[2] Exhibit 1 of the Gervasoni Certification includes the SENTRY Sentence Monitoring Computation Data printouts of 03-29-1996, 05-03-2000, 02-04-2002, 5-11-2004.

2

kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. The date for these offenses was given as June 27, 1984. (Gervasoni Certif. At Ex. 1A, pp. 1-2; Pet. Brief at ¶ 5). Gomez states that he was informed by the Federal Bureau of Prisons ("BOP") that both sentences were governed by former 18 U.S.C. § 4205(a), and aggregated pursuant to former 18 U.S.C. § 4161. (Pet. Brief at ¶¶ 4, 6).

On July 14, 1989, Gomez was sentenced in the United States District Court for the Northern District of New York to (1) a 10-year consecutive prison term based on his convictions for a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (offense date given as January 1, 1984); (2) a 10-year consecutive sentence for possession with intent to manufacture one kilogram of cocaine, aiding and abetting, and possession with intent to distribute one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (offense date given as April 12, 1985); and (3) a 10-year concurrent sentence for abandonment of hazardous waste, in violation of 42 U.S.C. §§ 6928(d)(2)(A) (offense date given as April 11, 1984). (Gervasoni Certif., Ex. 1A at pp. 2-4; Pet. Brief at ¶ 7).

All sentences imposed against Gomez are parolable offenses, with the exception of the CCE offense. Parole is not available for petitioner's 10-year sentence on the CCE conviction. See 21

U.S.C. § 848(c); Johnson v. Williford, 682 F.2d 868, 870-71 (9th Cir. 1982).

The record indicates that, in 1989, the BOP aggregated Gomez's consecutive parolable sentences to a total of 41 years in prison, pursuant to 18 U.S.C. § 4161.[3] His aggregated sentences commenced on January 16, 1987, the date that Gomez's first sentence was imposed. The BOP awarded presentence custody credit against the sentences for the time Gomez was detained before his first sentence was imposed, from April 24, 1986 through January 15, 1987.

Initially, the BOP also computed Gomez's "parole eligibility date" as April 23, 1996. This is the date Gomez first became eligible for parole consideration, which was one-third of his total aggregate parolable sentence, not to exceed a ten-year cap. See 18 U.S.C. § 4205(a), 28 C.F.R. § 2.5; PS 5880.30 Chap. VII at p. 6.[4] Gomez's projected mandatory release date is July 19,

---

[3] The respondents state that the BOP's computation of "old law" sentences is guided by Program Statement ("PS") 5880.30, Sentence Computation Manual. Gomez states that, while he was confined at the Federal Penitentiary in Terre Haute, Indiana, the BOP held that his sentence under 21 U.S.C. § 848 for his CCE conviction must be aggregated pursuant to 18 U.S.C. § 4161 and 28 C.F.R. § 2.5, to an aggregated term of 41 years in prison.

[4] The BOP further computed Gomez's "two-thirds date" as August 21, 2013, which represents two-thirds of his parolable sentence, not to exceed a thirty-year cap. See 18 U.S.C. § 4206(d), 28 C.F.R. § 2.53; PS 5880.30 Chap. VII at p. 9. This two-thirds date occurs after Gomez's projected mandatory release date.

4

2010. The Government notes that Gomez may be released from his aggregated parolable sentences only to his consecutive non-parolable CCE sentence. (Gervasoni Certif., Ex. 1D at pg. 5).

However, Gomez alleges that, sometime in 1989, he was given a new sentence computation data with a single parole date of May 31, 2002. He contends that this sentence calculation complied with the applicable law, pursuant to § 235(b)(3) of the Sentencing Reform Act of October 12, 1984, which mandated that all federal prisoners under the jurisdiction of the USPC be given a determinate parole date by 1992, five years after the enactment of the Sentencing Reform Act on November 1, 1987. (Pet., ¶¶ 9, 10). However, Congress amended § 235(b)(3) on December 7, 1987 and instructed the USPC to set release dates pursuant to 18 U.S.C. § 4206(c), which gave the USPC power to deny parole for good cause. (Pet., ¶ 11).

The respondents state that Gomez applied for parole on February 22, 1996, at which time he reviewed his institutional file. (Ex. 2). The USPC conducted an initial parole hearing on April 3, 1996. (Ex. 3). The USPC rated the severity of Gomez's offense as Category Eight, which, combined with his salient factor score, yielded a parole guideline range of 100+ months.

5

See 28 C.F.R. § 2.20, Chapter Nine, Subchapter c, ¶ 921(a); § 2.20 Guidelines Table.[5]

Gomez was denied parole on May 15, 1996, and the USPC ordered that he serve 15 years before a parole reconsideration hearing in April 2011.[6] (Ex. 4). In its Notice of Action, dated the same date, the USPC found:

> After review of all relevant factors and information presented, a decision more than 48 months above the minimum guideline range is warranted because you were involved in drug operation that produced at least 1,200 kilograms of cocaine and it only takes 18.75 kilograms of cocaine to have a ... Category Eight [rating]. In addition, the numerous chemicals found at your lab imposed a threat to anyone in the vicinity.

(Ex. 4). The USPC further ordered that Gomez receive a statutory interim hearing as required by law during April 1998.[7] (Id.). Finally, the Notice of Action informed Gomez that he could appeal the USPC decision to the National Appeals Board, but Gomez did not administratively appeal the May 15, 1996 denial of parole decision. In his petition, Gomez asserts that the USPC's decision vacated his May 31, 2002 parole eligibility date, in

---

[5] Section 2.20 reads: "For Category Eight, no upper limits are specified due to the extreme variability of the cases within the category."

[6] The USPC may set a presumptive parole date up to 15 years in the future; however, if the USPC believes that parole within that time would not be appropriate, it may set a 15-year reconsideration hearing. 28 C.F.R. § 2.12(b).

[7] In cases where parole has been denied and the remaining sentence to be served is more than seven years, an interim hearing must be held every two years. See 18 U.S.C. § 4208(h).

6

violation of the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause of the United States Constitution. (Pet., ¶ 12).

The first statutory interim hearing was held on April 27, 1998. (Ex. 5). In a Notice of Action dated June 19, 1998, the USPC ordered no change from its earlier decision and informed Gomez of his right to appeal to the National Appeals Board. (Ex. 6). Again, Gomez did not appeal for the USPC's opinion.

A second statutory interim hearing was conducted on April 4, 2000. (Ex. 7). It was noted that the BOP had recalculated Gomez's sentence, rendering a new "mandatory release date" of July 8, 2010.[8] This new release date preceded the April 2011 parole reconsideration hearing date. Thus, the USPC reopened Gomez's case and ordered that he serve to the expiration of his sentence. Gomez was informed of this decision by a Notice of Action dated May 3, 2000. The Notice of Action also informed Gomez of his right to administratively appeal the USPC decision, but Gomez did not file an appeal.

A third interim hearing was held on March 19, 2002, but there was no change by the USPC with respect to its prior decision that Gomez serve to the expiration date of his sentence.

---

[8] This projected release date is determined by subtracting all statutory good conduct time and extra good time earned, as well as projected good time to be earned, from the full term date of the sentence. In this case, Gomez was transferred to a different prison, where he was assigned a UNICOR work position that increased extra good time credit available to him, which served to advance his mandatory release date. (Exs. 1, 5, 7).

7

(Exs. 9, 10). Again, Gomez did not administratively appeal that decision. He also waived his next interim parole reconsideration hearing in early 2004. (Ex. 1D, pg. 5).

In June 2004, Gomez reapplied for parole consideration and received a statutory interim hearing on August 18, 2004. (Exs. 11, 12). In a Notice of Action dated September 9, 2004, the USPC again ordered "no change in continuance to expiration." (Ex. 13). Gomez filed an administrative appeal to the National Appeals Board. In a Notice of Action on Appeal, dated December 9, 2004, the National Appeals Board affirmed, stating:

> The National Appeals Board has reviewed your case on the merits and finds no reason to grant you a parole before the service of 279 months. You played a leadership role in a very sophisticated organization of drug traffickers. In the United States, you were involved in the operation of two large cocaine laboratories that manufactured over 200 kilograms of cocaine in one case, and an estimated 1,200 kilograms of cocaine in the other. (These chemical operations also posed a significant risk of fires and explosions.) You became a fugitive to avoid capture and you possessed two firearms at the time of your arrest in 1986. Your claim to have been a "puppet" of others is not credible, and there is no support in the record for your claim that your life was in danger from Colombian drug organizations. It is very likely that, if given your freedom, you would rapidly return to organized drug trafficking. Because you will only be 64 at the time of your mandatory release, your risk level will likely remain the same through the completion of your sentence.

(Ex. 14).

Gomez thereafter filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, on or about August 1, 2005. It appears that Gomez has exhausted his administrative remedies

before filing this federal habeas petition, and respondents do not argue otherwise. Respondents filed an Answer on November 21, 2005, with the relevant administrative record. A portion of petitioner's Presentence Investigation Report ("PSIR") was filed under seal. Petitioner filed his Objections to the Answer on January 23, 2006.

## II. CLAIMS PRESENTED

Gomez asserts that the USPC violated the Ex Post Facto Clause by not releasing petitioner within the USPC's own guideline range. He contends that his parole is governed by former 18 U.S.C. § 4205(a),[9] pre-guideline- "old law", which applies to cases where the offenses were committed before November 1, 1987. Thus, his parole release date hinges on when § 235(b)(3) of the Sentencing Reform Act went into effect. Specifically, Gomez relies on the Third Circuit ruling in Lyons v. Mendez, 303 F.3d 285 (3d Cir. 2002), in which the court held that § 235(b)(3) took effect upon enactment on October 12, 1984. The Third Circuit further held that "this original provision was in effect when Lyons committed his crimes in 1986, and thus the

---

[9] Section 4205(a) reads:

> (a) Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

retroactive application of the 1987 amendment to lengthen his punishment was unconstitutional under the ex post facto clause." Lyons, 303 F.3d at 292.

Gomez thus alleges that, like Lyons, he committed his crimes after the enactment of § 235(b)(3) in 1984, but before its amendment in 1987. He argues that Lyons is controlling, and the USPC "was required to respect the May 31, 2002 date that was originally given to Petitioner." (Pet. Brief at pg. 7).

Gomez further argues that the USPC lacked the discretion under the applicable Sentencing Reform Act to depart from its own guidelines in determining petitioner's parole.

In response, the Government contends that Gomez was never given a firm parole date of May 31, 2002 by the USPC. Moreover, the Third Circuit's decision in Lyons is not applicable here because Gomez has no upper guideline limitation and he committed at least some of his criminal conduct before the Sentencing Reform Act of 1984 was enacted.

### III. ANALYSIS

#### A. The Sentencing Reform Act

The parties agree that the dates of Gomez's offenses all preceded November 1, 1987. Before November 1, 1987, the Parole Commission and Reorganization Act of 1976 ("PCRA") governed the terms of federal sentences. 18 U.S.C. §§ 4201-4218 (repealed 1984, effective 1987). Under 18 U.S.C. § 4206, the USPC was

authorized to award federal prisoners parole under specified circumstances.

> (a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare;
>
> subject to the provisions of subsections (b) [pertaining to written notice of decisions] and (c) [pertaining to decisions outside the guidelines] of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.
>
> . . .
>
> (c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: <u>Provided</u>, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
>
> . . .

18 U.S.C. § 4206.

Dissatisfied with this parole system, Congress passed the Sentencing Reform Act of 1984 ("SRA"), which repealed and replaced the PCRA, and which became effective on November 1, 1987. Pub. L. No. 98-473, §§ 212, 218, 98 Stat. 1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74,

3581-86, 28 U.S.C. §§ 991-98 (1988)). Under the SRA, parole was to be abolished for offenses committed after November 1, 1987, the USPC was to be phased out after five years, and prisoners were to serve uniform sentences under sentencing guidelines.[10] Section 235(b)(3) of the original SRA provided that:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, <u>that is within the range that applies to the prisoner under the applicable parole guideline</u>. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

<u>Id.</u> (emphasis added). On December 7, 1987, Section 235(b)(3) was amended to delete the clause requiring the USPC to set release dates <u>within</u> the guideline range. <u>See</u> Sentencing Act of 1987, Pub.L. No. 100-182, § 2(b)(2), 1010 Stat. 1266 (1987). The amended section 235(b)(3) requires the USPC to set release dates "pursuant to section 4206 of Title 18 United States Code," which permits release dates <u>outside</u> the guideline range.

Congress repeatedly has extended the life of the USPC to administer those prisoners with pre-SRA sentences. <u>See</u>, <u>e.g.</u>, Pub.L. No. 101-650, Title III, § 316, 104 Stat. 5089, 5115 (1990)

---

[10] The SRA was intended to replace "a system of indeterminate sentences and the possibility of parole with determinate sentencing and no parole." <u>Walden v. U.S. Parole Commission</u>, 114 F.3d 1136, 1138 (11th Cir. 1997).

(extension to ten years); Pub.L. No. 104-232, § 2(a), 110 Stat. 3055 (1996) (extension to fifteen years); Pub.L. No. 107-273, § 11017, 116 Stat. 1758 (2002) (extension to eighteen years); Pub.L. No. 109-76, § 2, 119 Stat. 2035 (2005) (extension to twenty-one years). The life of the USPC has been extended most recently to October 31, 2008. See id.

Pursuant to the guidelines promulgated by the USPC, at all times relevant to this action, a federal prisoner with an Offense Severity Rating of Eight has had a guideline range of at least 100-plus months to be served before release, regardless of the prisoner's Salient Factor Score. 28 C.F.R. § 2.20 Table "Guidelines for Decision-Making." See 47 Fed.Reg. 56334-36 (Dec. 16, 1982); 50 Fed.Reg. 40365-67 (Oct. 3, 1985); 52 Fed.Reg. 46596-97 (Dec. 9, 1987). In the regulation, the USPC notes "For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category." 28 C.F.R. § 2.20 Table "Guidelines for Decision-Making" Note 1.

B.  No Ex Post Facto Violation

Petitioner's first claim is that the USPC has violated the Ex Post Facto Clause by retroactively applying the 1987 amendment to § 235(b)(3) of the SRA to increase his time served in prison. Article I, Section 9, of the United States Constitution provides that "No ... ex post facto Law shall be passed." Thus, the Ex Post Facto Clause prohibits Congress from enacting any laws that

13

"retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990).

The Court of Appeals for the Third Circuit clearly has held that the 1987 amendment to § 235(b)(3), which reinstated the authority of the USPC to set parole release dates outside the guideline range, violates the Ex Post Facto Clause when applied to an offender who committed his crimes between October 12, 1984, and November 1, 1987, during which time the original § 235(b)(3) required the USPC to set parole release dates within the guideline range. See Lyons v. Mendez, 303 F.3d 285 (3d Cir. 2002).

Faced with an issue similar to that presented here, however, the Court of Appeals for the Third Circuit held that it was unnecessary to consider whether the amended version of Section 235(b)(3) was applied unconstitutionally to a Category Eight offender whose offenses had been committed in 1976. Madonna v. U.S. Parole Commission, 900 F.2d 24 (1990). Assuming arguendo that no upward departure was permitted, the Court found that no upward departure had occurred, or could occur, because there is no upper limit to the guideline range applicable to Category Eight offenders. Id. at 25-26.

Similarly, here, the USPC has not set a parole reconsideration date outside of the guideline range, because the

guideline range, at all relevant times, for Gomez, a Category Eight offender, has been 100-plus months. Gomez's convictions involving a major manufacturing and distribution scheme for cocaine qualified Gomez for a Category Eight offense severity rating with a guideline range of 100+ months with no maximum limit. See 28 C.F.R. § 2.20. Thus, there is no maximum period that a denial of parole could exceed.

Consequently, Lyons is not helpful to Gomez as he asserts, because Lyons involved a parole reconsideration date given outside of a guideline range containing a maximum upper limit. In Lyons, the Third Circuit held that application of the 1987 amendment of § 235(b)(3) fit two criteria of an unconstitutional ex post facto law. First, the USPC had applied the amended § 235(b)(3) retrospectively, in order to justify the upward departure despite the fact that Lyons' offenses had been committed in 1986 before the enactment of the 1987 amendment. Id. Second, the USPC's application of the 1987 amendment to Lyons had clearly disadvantaged him, because "it permitted the Commission to set his release date beyond -- rather than within -- the guideline range." Lyons, 303 F.3d at 293. Here, there is no disadvantage to Gomez as a Category Eight offender with no upper limit to his guideline range.[11] Thus, this case fails to

---

[11] Gomez also argues that the USPC lacked discretion under the original § 235(b)(3) of the SRA to depart from the guidelines in determining his parole. This claim is completely meritless

satisfy the second prong showing an increased punishment or disadvantage to Gomez, necessary to establish an unconstitutional ex post facto law.

C.  There Was No Firm Parole Date of May 31, 2002

The Court next considers the respondents' argument that there was no firm parole date of May 31, 2002 as claimed by Gomez. It would appear that the date of May 31, 2002 was first noted in a BOP SENTRY Sentence Monitoring Computation Data printout dated September 3, 1989. This printout shows a "parole eligibility" date of May 31, 2002, as computed by the BOP.

---

because no upward departure occurred. As a Category Eight offender, Gomez had no upper limit to his guideline range.

Furthermore, this Court finds that there was no abuse of discretion by the USPC in denying parole and having Gomez serve to the expiration of his sentence in July 2010. The USPC properly relied upon the information contained in Gomez's PSIR in classifying the offense as a Category Eight. Gomez does not dispute this classification. The USPC also considered the scope of Gomez's criminal conduct and his leadership role in a significant drug trafficking criminal enterprise in denying parole. In short, the USPC clearly explained its reasons for denying parole and they do not demonstrate an abuse of discretion.

Finally, because this Court finds that no upward departure occurred as Gomez is a Category Eight offender with no upper limit to his guideline range, it is not necessary to consider respondents' argument that Gomez committed some of his offenses before the SRA was enacted. Respondents argue that Lyons does not apply to Gomez because at least one of the crimes for which he was convicted occurred before October 12, 1984, and the court's decision in Lyons held that the unamended version of § 235(b)(3) was intended to benefit only those class of prisoners who had committed their offenses between October 12, 1984 and December 7, 1987.

Respondents argue that, while the computation of a federal inmate's sentence is committed to the BOP, see United States v. Wilson, 503 U.S. 329, 335-37 (1992), decisions as to the grant or denial of parole are committed to the USPC. Billiteri v. U.S. Board of Parole, 541 F.2d 938, 944 (2d Cir. 1976). The USPC relies on the BOP to compute a federal prisoner's sentence, which would include certain dates pertinent to the USPC's activities, such as, the parole eligibility date, the two-thirds date, and mandatory release date, but it is the USPC that makes the substantive determination as to whether parole should be granted.

Here, the BOP computed Gomez's initial parole eligibility date in April 1996. The USPC conducted an initial parole eligibility hearing in April 1996 and denied parole at that time and on all subsequent interim reviews. Thus, the "May 31, 2002" date is nothing more than a "misconstruction of the BOP's sentence computation document". (Resp. Answer at pg. 12). The USPC never rendered any decision giving May 31, 2002 as a parole eligibility date or a parole reconsideration hearing date.

## IV. CONCLUSION

Therefore, based on the reasons set forth above, the Petition will be denied for lack of merit. An appropriate order follows.

ROBERT B. KUGLER
United States District Judge

Dated: September 7, 2006

17